# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JULIE LILES,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:15-cv-00376-JEO |
| } | |
| **CAROLYN W. COLVIN,** } | |
| **Commissioner of the** } | |
| **Social Security Administration,** } | |
| } | |
| **Defendant.** } | |

## **MEMORANDUM OPINION**

Plaintiff Julie Liles ("Liles") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income. (Doc. 1). This case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for the disposition of the matter. (Doc. 9). *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

## I.   PROCEDURAL HISTORY

On December 30, 2011, Liles filed an application for disability insurance benefits and supplemental security income with the Social Security Administration. (R. 10). The Regional Commissioner denied her claims on June 24, 2012. ( R. 10). Liles filed a Request for Hearing with an Administrative Law Judge ("ALJ") on July 17, 2012. (R. 101). On October 1, 2013,

Administrative Law Judge Ronald Reeves conducted a hearing which Liles, her attorney, and a vocational expert ("VE") attended. (R. 25). The ALJ issued a decision denying Liles's disability insurance benefits and supplemental security claims on October 29, 2014. (R. 7).

On November 21, 2013, Liles requested the Appeals Council review the ALJ's decision. (R. 6). The Appeals Council denied her request for review on December 29, 2014. (R. 1). On that date, the ALJ's decision became the final decision of the Commissioner. Liles then filed this action for judicial review under 42 U.S.C. §§ 405(g) and 1383(c).

## II.   STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly tailored. The court must determine whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance." *Id.* It means the decision is supported by "relevant evidence a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Applying the foregoing standard, the court must defer to the ALJ's factual findings. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Winchel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). In contrast, the court reviews questions of law de

novo. *See Cornelius*, 936 F.2d at 1145. Accordingly, no presumption of validity attaches to the ALJ's conclusions of law. *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). If the court finds the ALJ improperly applied the law, or failed to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the court must reverse the ALJ's decision. *See Cornelius*, 936 F.2d at 1145-46.

### III.   STATUTORY FRAMEWORK

To qualify for disability benefits, a claimant must show she is disabled. Being disabled is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The plaintiff bears the burden of proving that she is disabled and is responsible for producing evidence in support of such a claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence whether the claimant: "(1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his

3

residual functional capacity, age, education, and work experience." *Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(4)).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.' " *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Id.*; *Evans*, 551 F. App'x at 524.

## IV. FINDINGS OF THE ALJ

Liles was 43 years old at the time of the ALJ's decision, defining her as a younger individual age 18-49.  (R. 231).  She has a high school education and is able to communicate in English.  (R. 18).  The ALJ found that she had not engaged in significant gainful activity ("SGA") at any time relevant to the decision.  (R. 12).  Liles alleges an onset date of disability beginning January 1, 2008.  (R. 200).  The ALJ determined her date of last insured to be December 31, 2012.  (*Id.*)  Following a hearing, the ALJ determined Liles had the following medically determinable "severe" impairments: major depressive disorder, generalized anxiety disorder, bulimia, right hip bursitis, and obesity.  (R. 13).  She also suffers from a number of additional ailments, including hypertension, gastroesophageal reflux disease, foot paresthesia, ankle arthralgia, and a remote history of substance abuse.  (*Id.*)  The ALJ found these additional impairments, however, did not impose a significant limitation on Liles's ability to perform basic

work activities when considered in combination, and therefore were "non-severe impairments."

(*Id*.)

Moving to the next step, the ALJ found neither of Liles's severe impairments met or medically equaled the severity of the impairments included in the Listings. (R. 13). The ALJ found that she had the residual functional capacity ("RFC") to perform

> light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except the claimant is limited to occasional operation of foot controls with her right leg. She can never climb ladders, ropes, or scaffolds, but she can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. She can perform simple, routine, and repetitive tasks in a low stress environment, which is defined as requiring occasional decision making and having occasional changes in the work setting. The claimant further is restricted to occasional interaction with coworkers, but no interaction with the public.

(R. 15). The ALJ also found Liles incapable of performing her past relevant work as an accounts receivable clerk or a telephone order clerk, both of which are at the sedentary exertional level. (R. 18). Relying on the VE's testimony, the ALJ further found that jobs exist in the national economy that Liles could perform, including cleaner, merchandise marker, and garment sorter. (R. 19). The ALJ concluded Liles was not disabled within the meaning of the Social Security Act from January 1, 2008 through the date of the decision. (R. 20).

## V.   DISCUSSION

Liles argues that the decision of the ALJ is due to be reversed and benefits awarded to her or the decision is due to be remanded for further review because the ALJ "did not properly assess [her] credibility consistent with the Regulations." (Doc. 11 at 4). The Commissioner responds that "the ALJ properly applied the pain standard and substantial evidence supports his finding that [Liles's] subjective complaints were not entirely credible." (Doc. 14 at 4).

**A. The Standard**

It is well-settled that Liles bears the burden of proving that she is disabled. *See* 42 U.S.C § 423(D)(5)(A); 42 U.S.C. § 1382c(a)(3)(H)(i); 20 C.F.R. § 404.1512(a), (c); 20 C.F.R. § 416.912(a) ("In general you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)."); 20 C.F.R. § 416.912(c) ("Your responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim."); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("An individual claiming Social Security disability benefits must prove that she is disabled."); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (stating that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim").

In evaluating a disability claim involving subjective complaints such as pain, United States District Judge L. Scott Coogler has stated:

> In order to establish a disability on the basis of subjective testimony of pain and other symptoms, the claimant must present evidence to support the Eleventh Circuit's pain standard. Under this standard, a plaintiff must present (1) evidence of an underlying medical condition; and (2) either a) objective medical evidence confirming the severity of the alleged symptoms or b) that the objectively determined medical condition is of such a severity that it can reasonably [be] expected to give rise to the alleged pain. *See* 20 C.F.R. § 404.1529(a) (2011); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1991) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1225 (11th Cir. 1991)). If the claimant establishes an impairment that could reasonably be expected to cause his alleged symptoms, the ALJ is obligated to evaluate the claimant's subjective complaints, including intensity and persistence of the alleged symptoms and their effect on the claimant's ability to work. *Hogard v. Sullivan,* 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ

> may discredit this type of pain testimony only by articulating "explicit and adequate reasoning" based on substantial evidence from the record. *Foote*, 67 F.3d at 1561; *Wilson,* 284 F.3d at 1225.

*Parker ex rel. Parker v. Colvin,* 2013 WL 2635696, *3 (N.D. Ala. June 10, 2013). A reversal is warranted if the decision of the ALJ contains no indication of proper application of the three-part standard. *Holt*, 921 F.2d at 1223.

### B. Discussion

#### 1. Liles's View

Liles initially contends that the ALJ did not properly apply Eleventh Circuit precedent, he failed to properly consider her longitudinal medical history, and he mischaracterized the evidence. (Doc. 11 at 5). In support of her contention that she is disabled, she points to medical records evidencing "debilitating symptoms from depression and anxiety." (*Id*.) This evidence includes (1) records from 2005, citing depression and bulimia with a Global Assessment of Functioning of 35 (R. 307); (2) treatment notes from November 2008 by Dr. Jimmy M. Sparks, assessing her with depressive disorder and anxiety (R. 296-98); (3) records from the Jefferson County Department of Health from November 2009 to February 2011 for treatment of depression and anxiety disorder (R. 339, 345, 349, 352, 356, 368); and (4) treatment notes from Cooper Green Hospital for depression and anxiety through 2013 (R. 420, 422, 429). Liles concludes that she should have been found disabled based on her pain pursuant to SSR 96-7p[1] and the Eleventh Circuit's three-part pain standard. (Doc. 11 at 2-3).

---

[1] Although this ruling has since been superseded by SSR 16-3p, at the time of the ALJ's opinion SSR 96-7p was still in use.

> SSR 96-7p provides:
>
> PURPOSE: The purpose of this Ruling is to clarify when the evaluations of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's

### 2. The Record

On March 9, 2011, Dr. Jack L. Zaremba, a consultative examiner, found Liles had full range of motion in her arms and legs, and reported ankle pain. (R. 376). Liles sought additional treatment for lower extremity pain in November 2012 when she saw Dr. Paul Mendoza and complained of right foot and hip pain. (R. 422). Dr. Mendoza performed X-rays which found

---

statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination of decision. [] In particular, this Ruling emphasizes that:

1. No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.
2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.
3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.
4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statement about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.
5. It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186 (July 2, 1996) (footnote omitted).

her hips and knees to be normal on the right side.  Additionally, Dr. Mendoza found the "left hip shows a deformity of the greater trochanter which appear[s] to be secondary to old trauma."  (R. 427).  Liles received two injections for her right hip pain, one upon her initial visit to Dr. Mendoza on November 19, 2012, followed by an injection on January 14, 2013.  (R. 421, 423).  She sought no further treatment for her hip bursitis after the second injection, suggesting that the injections were successful in relieving her pain.

As to her mental state, Liles's medical records chronicle her treatment for depression and an eating disorder in 2005.  (R. 300).  In 2007, she reported her symptoms began to improve.  (R. 312).  In November 2008, her treating physician, Dr. Sparks, reported Liles was "doing well" after being on medication since October 2006.  (*Id.*)  However, she wanted to change medications due to joint pain.  Dr. Sparks instructed Liles to see an internist or psychiatrist to manage her depression and transfer her to a different medication.[2]  (R. 298) .  He stated in his notes that he did not "feel comfortable providing care for her depression given her poor response to so many medications."  (*Id.*)

In January 2010, Dr. Xuan-Dao Thi Pham reported that Liles's medications were "relieving" her depression and anxiety symptoms.[3]  At this time, Liles sought a psychiatric referral for her bulimia.  (R. 352).  In October 2010, Liles reported increased depression; Dr. Pham adjusted her medication from one 40 mg dose of Celexa each morning to one and a half 40 mg each morning.  (R. 344).  Visiting Dr. Pham in November 2010, Liles did not report any complaints or symptoms and stated she was "doing well."  (R. 338).

---

[2] Dr. Jimmy M. Sparks specializes in Obstetrics and Gynecology.  *See* http://doctor.webmd.com/doctor/jimmy-sparks-md-a3ef8bb3-8ddb-4b58-993c-e762ff5bab13-overview (last visited July 9, 2016).

[3] Dr. Xuan-Dao Thi Pham specializes in Family Practice medicine. http://doctor.webmd.com/doctor/xuan-dao-thi-pham-md-2c05478d-3a05-45ac-afcc-3c8b7d9e490a-overview (last visited July 9, 2016).

In March 2011, consultative examiner Dr. Jack L. Zaremba reported that Liles "become[s] very tearful in talking about her issues."[4] (R. 375). Dr. Zaremba also noted that Liles has difficulty self-motivating but is able to attend to her daily activities and care for her daughters. (R. 376). He also noted that Liles mentioned experiencing anxiety regarding stressful situations, as well as her difficulty functioning in groups. (*Id.*) Dr. Zaremba stated that Liles "would benefit from a psychiatric evaluation and ongoing care in order to manage her symptoms and perhaps allow her to become more productive, particularly in certain work style situations." (R. 377).

Consultative examiner and clinical psychologist Dr. Chebon A. Porter diagnosed Liles in May 2011 with major depressive disorder, moderate bulimia nervosa, and panic disorder without agoraphobia. (R. 395). Dr. Porter stated:

> Ms. Liles presents as an individual who is reportedly applying for disability benefits per her psychiatric distress. Her self-report appears to be reliable and she clearly endorses a remote history of sufficiently severe distress as to warrant psychiatric hospitalization. Moreover, she does endorse ongoing psychiatric distress; which also appears to be valid. However, based on the reported severity of her emotional distress and disordered eating, there is insufficient evidence (e.g., per bulimia, has binged/purged one day in the past 7-9 days; averages one panic attack per month; depression described as currently moderate) that the conditions are disabling, per se. Her prognosis is guarded, but may improve to good with pertinent treatment. She appears to be capable of managing her own finances.

(*Id.* at 394-95).

In March 2012, Dr. William B. Biedlemen, another consultative examiner and licensed psychologist, diagnosed Liles with major depressive disorder, bulimia nervosa, generalized anxiety disorder, and polysubstance abuse in current remission. (R. 417). Dr. Biedlemen stated:

---

[4] Dr. Zaremba specializes in internal medicine. *See* http://doctor.webmd.com/doctor/jack-zaremba-md-78c3a869-20ea-45d5-82fe-7fbfaddc4534-overview (last visited July 9, 2016).

> [Liles] has no difficulty driving and is able to take her children to the park and attend church. She emphasized chronic pain as being one of her principle work impediments. She appears able to function independently and remember simple instructions. She may have difficulty responding appropriately to fellow employees and supervisors, as well as difficulties coping with significant work pressures.

(*Id.*)

Liles did not seek further treatment until April 2012 when she requested additional medication for her depression and anxiety from Cooper Green Hospital. (R. 429). She was experiencing pain, and "hurting all over," and cried during the interview. (*Id.*) She reported in November 2012 that her medication was controlling her symptoms but she was still experiencing anxiety. (R. 16, 422). She did not seek additional mental health treatment.

### C. Analysis

As noted, Liles asserts that the ALJ did not properly assess her credibility in accordance with the Regulations, and therefore did not properly apply the Eleventh Circuit pain standard. (Doc. 11 at 4, 5). The court disagrees.

An ALJ is required to examine the evidence of any underlying medical condition and if the plaintiff establishes an impairment that could reasonably be expected to cause her alleged symptoms, the ALJ is obligated to evaluate the plaintiff's subjective complaints, including the intensity and persistence of the alleged symptoms and their effect on the plaintiff's ability to work. *Parker ex rel. Parker*, 2013 WL 2635696 at *3. Thereafter, the ALJ may discredit pain testimony only by articulating "explicit and adequate reasoning" based on substantial evidence from the record. *Id.* (citing *Foote*, 67 F.3d at 1561; *Wilson*, 284 F.3d at 1225).

Liles claims the ALJ "failed to properly consider [her] longitudinal medical history and mischaracterized the evidence." (Doc. 11 at 5). To the extent she argues the medical records

"support [her] testimony of debilitating symptoms from depression and anxiety," the court finds that the determination of the ALJ is supported by substantial evidence. The ALJ observed:

> Prior to the alleged onset date, the claimant was noted to have depression and an eating disorder. She began taking Cymbalta and her symptoms were noted to be improving with medication compliance in 2007 (Exhibits 2F, 3F, 2-3). By November 2008, the claimant was noted to be "doing well" regardless of her depression and anxiety (Exhibits 1F; 3F, 1). She did not follow up regarding her depression and anxiety again until January 2010, when she admitted that she was getting relief from Celexa (Exhibit 6F, 15-18). Similarly, she reported doing well as of March 31, 2010 (Exhibit 6F, 12-14).

(R. 16). He then noted:

> Subsequently, the claimant reported experiencing some depression and a lack of energy as of October 6, 2010 (Exhibit 6F, 8-11). She did not complain of any depressive or anxiety symptoms again until March 2011, when she told J.L. Zaremba, M.D., that she has difficulty with stressful events and crying spells (Exhibit 7F). Later, on May 26, 2011, Chebon Porter, Ph.D., a consultative examiner, noted that the claimant's depression causing [sic] moderate symptoms and limitations. She retained normal concentration, persistence, or pace and normal knowledge along with significant depressive and anxiety symptoms (Exhibit 9F)…

(*Id.*) The ALJ then cited Dr. Beidleman's assessment that Liles had only mild to moderate depressive symptoms. (*Id.*) The ALJ further considered Liles's request for depression medication on April 4, 2012, and her November 2012 report of well-controlled depression symptoms with remaining anxiety. (*Id*.) Finally, the ALJ notes that Liles sought no further treatment. (*Id*.) The ALJ accounted for Liles's limitations, specifically those found by Dr. Zaremba, in the RFC by restricting her to "performing simple, routine tasks in a low stress environment with occasional interaction with coworkers, but no interaction with the public." (*Id.*) Thus, the ALJ considered Liles's entire medical record and the totality of the evidence in reaching his decision.

Liles further argues that the ALJ improperly referenced "isolated notations in the record" to support his credibility findings. (Doc. 11 at 5). The court finds the ALJ's decision to give less credit to Liles is supported by substantial evidence. The ALJ determined Liles's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but found her statements concerning the "alleged intensity, persistence, duration, and impact on functioning are not credible or consistent with the totality of the evidence." (R. 16). Turning to the medical evidence, the ALJ noted that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations and they do not support the existence of limitations greater than those reported" in the RFC. (*Id.*)

The ALJ gave adequate reasoning for discrediting Liles's statements, citing discrepancies between her complaints and her treatment records as well as her testimony concerning her daily activities. (R. 16-17). The ALJ stated: "In evaluating the persuasiveness of the claimant's allegations and testimony, I note that the scope of the claimant's daily activities weakens the credibility of the allegations." (R. 17). Liles's testimony detailed her ability to carry out her daily activities, care for her daughters as well as herself, and participate in church activities. (*Id.*) The ALJ further noted that "the claimant admitted that she stopped working for reasons unrelated to her medically determinable impairments, which suggests that the claimant could have continued working." (*Id.*) Moreover, "the claimant received minimal inconsistent treatment for her alleged disability impairments." (*Id.*)

In reaching these credibility determinations, the ALJ found that Dr. Mendoza treated Liles's physical severe impairment of right hip bursitis with injections. Liles did not seek further treatment for her hip pain, suggesting that the pain had subsided. *See* 20 C.F.R. § 404.1529; *see*

13

*also Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) (if an impairment can be controlled by treatment or medication, it cannot be considered disabling for purposes of application for social security disability benefits).  Regarding Liles's right foot pain, the ALJ appropriately adjusted her RFC, limiting her to "occasional operation of foot controls with her right leg."  (R. 15).

Concerning Liles's mental impairments, the ALJ's consideration is clear and thorough. Under Eleventh Circuit precedent and SSR 96-7p, the ALJ must conclusively determine the credibility of the plaintiff in accordance with the entirety of the evidence presented.  Here, the ALJ considered Liles's medical history, and found that overall she was stable while taking her medication.  He appropriately considered that her symptoms have remained relatively controlled since she started taking medication in 2005.  The ALJ discussed the assessments of each of her treating physicians and consultative examiners when determining the consistency of her medical records with her testimony, and adjusted the RFC appropriately.  (R. 16-18).

To the extent Liles argues that the ALJ mischaracterized the evidence concerning her "everyday activities," the court disagrees.  First, Liles is correct that mere "participation in everyday activities of short duration, such as housework…, does not disqualify a claimant from disability."  (Doc. 11 at 9 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997)). However, such activities may be considered as undermining a claimant's allegations of disabling limitations.  See  20 C.F.R. 404.1529(c)(3)(i); SSR 96-7p, 1996 WL 374186 at *3, 6 & 7; *see also Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ("The regulations do not []prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process."); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) ("the ALJ properly considered a variety of factors, including the claimant's use of pain-killers and his daily

activities, in making the finding about pain."). In this instance, the ALJ did not rely solely on Liles's daily activities. Nor did he find her activities to be dispositive of her ability to work. He only noted "that the scope of [her] daily activities weakens the credibility of the allegations." (R. 17). He viewed this evidence along with the other relevant medical evidence, as he was required to do.

To the extent that Liles argues that the ALJ reached an improper factual conclusion regarding her move to Mobile, the court does not find that significant under the circumstances. Liles argues, "The ALJ did not take into account the high likelihood [she] had no other choice but to move to Mobile. His insinuation that because she moved she is not mentally disabled is simply irrational." (Doc. 11 at 10). What the ALJ stated was that Liles "testified that she recently moved her family to Mobile, Alabama, in order to look for better housing." (R. 17). He then concluded that this "suggest[s] that she felt physically and mentally able to move her family." (*Id*.) Liles testified that she was forced to move after her Leeds home was found to be infested with mold. She and her family stayed with a friend until she determined that renting a home in Mobile was too expensive. They then moved back to Leeds. (R. 30). What the ALJ did here is evaluate the facts and reach a conclusion. Even if Liles is correct that the ALJ did not fully consider that she may have had no other choice, that does not justify any relief at this juncture. She was able to move her family twice and effectively evaluate their situation. At worst, the ALJ's finding was harmless. *See Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir.1983) (holding that the complained-of error was harmless because it did not impact the step being challenged). Liles is entitled to no relief.

Because the ALJ gave specific reasoning for discrediting Liles's claims and reviewed the totality of the record, the court disagrees with Liles's argument that the ALJ did not follow Eleventh Circuit precedent. Liles has failed to show how the ALJ legally or factually misapplied applicable Eleventh Circuit precedent.

## VI. CONLCUSION

For the foregoing reasons, the court finds the Commissioner's decision is due to be **AFFIRMED**.

**DATED,** this 11th day of July, 2016.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge